COOK *et al.* v. THE CITY OF BURLINGTON *et al.*                    36   357
                                                                  114  439

1. **Municipal corporation:** CONTROL OVER STREETS AND PUBLIC PROPERTY.
   It is competent for the authorities of a city, by voluntary agreement, to
   convey to a railroad company the same right to occupy the streets and
   public grounds of a city for railroad and like purposes, as the company
   might acquire by calling into exercise the power of eminent domain.

2. —— OVER ACCRETIONS TO STREET. The case of *Cook* v. *The City of
   Burlington*, 30 Iowa, 94, holding it competent for the city to convey to
   a railroad company the right of way and other uses connected with its
   road in respect to certain accretions to a street bounded on the Missis-
   sippi river, reaffirmed and followed.

*Appeal from Des Moines District Court.*

THURSDAY, APRIL 24.

THIS is a suit in equity brought by the plaintiffs, who are
the owners of lots bordering on Front street, in the city of
Burlington, to enjoin the said city and its officers from passing
a certain ordinance, and making a lease thereunder of a part
of the said street formed by accretions, to the Toledo, Peoria
& Warsaw Railway Company. Upon the filing of the petition
a temporary injunction was allowed. No questions arise upon
the pleadings. Under the issues formed, the parties made the
following agreed statement of facts:

"The city of Burlington was laid out into lots, streets, etc.,
as appears by the annexed map marked exhibit B, under the
acts of congress of July 2, 1836, and March 3, 1837. That
all of the streets laid out in said city are of a fixed width,
being generally eighty feet, except that designated on the
original plat as "Front street," which was of irregular width,
as is more fully stated hereafter. In pursuance of said acts
all the land east of the east line of lots in said city was re-
served from sale and designated on said map as Front street,
as appears by the map. Plaintiffs claim that the acts of con-
gress and the said map show conclusively that the street ex-

tends to low-water mark. Defendants claim that the acts and map do not establish Front street the entire width of the said strip of land.

That when the city was laid out, a creek, known as Hawk-eye creek, emptied into the river at what is marked in said map as Market square, and in front of plaintiffs' lots the Mississippi river extended up to the meander line marked on said map. The city authorized the course of said creek to be changed, by the B. & M. R. R. Co., under a deed to them hereinafter named, so that for several years it has flowed out at Locust street, and in Front of plaintiffs' property, and gradually by the alluvial deposits of said creek, and the river combined, said strip of land in front of plaintiffs' property has become (in low water) about 425 feet in width, and this addition has come to be known as accretions. The width of said strip of land was and is irregular, as is shown by the map. After the city was laid off and said plat was made and approved, the government sold the lots in said city, including those of plaintiffs, as follows: E. A. Cook lots were sold by United States; lot five, February 12, 1841; lot six, February 11, 1841; lot seven, January 18, 1847; lot eight a, January 18, 1847; lot nine, June 26, 1845; lot ten, February 12, 1841. Berry & Co., was sold February 11, 1841. That E. A. Cook acquired her lots at the following dates: Lot five, April 10, and July 10, 1866, lot six; June 4, 1866, seven and eight a; July 25, 1870, nine and ten. Berry & Co. acquired theirs at following date: July 13, 1866. All holding by direct chain of title from the government.

When plaintiffs purchased their lots they did so with a view to their situations upon said strip of land reserved from sale as aforesaid, and their frontage on the river, by reason of which they had a value that lots not so situated did not have. That plaintiff Cook's lots had, at the time she purchased them, a saw shingle mill situated thereon, and afterward she made large additional improvements thereon, at an expenditure of several thousand dollars; and said Berry & Co. have sheds and lumber yards upon lot 989, and run the same in connection

with their saw-mill, which is situated immediately south of South street, on which they have valuable improvements.

By act of congress of February 14, 1853, the fee title of said strip of land was vested in the city subject to certain restrictions, all of which will appear by said act, which is referred to and made part hereof. That on the 4th day of August, 1853, the city passed an ordinance in regard to the width of said Front street, declaring it to be eighty feet. Afterward, the B. & M. R. R. Co., at a large expense, filled up the accretions north of Locust street, deeded to them, and are now holding and using the same for railroad purposes, and have the exclusive use and occupancy thereof, under an unconditional deed. But all of said accretions, so occupied, are above plaintiffs' property, and the use does not interfere with plaintiffs' rights to said street, or use of same in front of plaintiffs' property. The charter of the city and several amendments touching the questions in controversy may be considered as if incorporated herein and in evidence.

This plat shows Front Street, the Accretions, Plaintiff's Lots, and the Lots and Streets in the immediate vicinity of the *locus in quo*.

North of Valley street the city has macadamized and improved the strip of land for the space of about 250 feet to low-water mark, and has paved the same in the usual manner, and as the other improved streets of said city are improved, and the same is now used as a highway and the same as other streets of the city, and for a levee or wharf. South of Locust street, and in front of plaintiffs' lots, the said accretions have never been filled in or improved by the city, but that part of the street shown on the original map has always been used as a traveled highway by the public.

That part in front of said lots known as accretions, plaintiffs have always used for the purpose of their business; in low water by tramways and other appliances and in high water landing boats and rafts, etc., near to the mills; and the city has never in any manner interfered with the free use of said street by plaintiffs, and others who have seen proper to use them, except as such use was interfered with by the construction of two railway tracks along the streets, within some fifty feet of plaintiffs' lots, and the running of trains thereon. But the city has collected wharfage of plaintiffs for their use of the same. The space between Locust and South streets (north and south) is about 800 feet, and from plaintiffs' lots to low-water mark, east and west, is about 425 feet; so that the portion of said strip of land proposed to be leased by the city is about 300 feet east and west by 800 north and south.

The city council on September 26, 1870, passed an ordinance granting the right of way to the Toledo, Peoria & Warsaw Railroad Company, on and along said Front street, and they have been using the same since January, 1872, for the passage of their trains; said ordinance is referred to and made part hereof, and admitted in evidence. Said company are the owners of eight lots situated on Front street, contiguous to their right of way, and being lots Nos. 13, 13a, 14, 15, 15a, 16, 18 and 20. The accretions in controversy are so situated in regard to the railroad bridge. over the Mississippi river, that the T., P. & W. R. Co. cannot move their trains

on to the accretions from the bridge and main track without running up to Locust street and backing down on the same.

In this condition of things, the city propose to pass an ordinance authorizing the mayor to lease the said accretions between Locust and South streets to said T., P. & W. R. Co., leaving eighty feet between plaintiffs' property and the leased premises, and eighty feet between the east side of the leased premises and low-water mark on the river for a levee or wharf, as stated in the ordinance, for a term of ninety-nine years, for certain considerations mentioned; and ordained that the "said railway company may use the said land and accretions for such railroad uses and purposes connected with their railway as is or may hereafter under the laws of this State be lawful to do with lands condemned by right of eminent domain and thus acquired by railroads, but for no other uses or purposes," and but for this interference of the court said city would have made said lease, and now propose to make the same, and give the said railroad company the exclusive use of about 300 by 800 feet of said accretions in front of plaintiffs' lots so far as said ordinance will authorize.

If the city is allowed to make the lease to the railway company, and they are allowed to take possession of said accretions, they will so use them as to seriously and injuriously affect the use of plaintiff's property for the purpose for which it is used by them, and the railroad will so occupy the leased premises that the use of the same as a highway will be greatly impaired and interfered with; and the use of the same by plaintiffs in going from their lots to the river will be rendered difficult and dangerous, and said highway will be greatly and materially obstructed by the standing of cars, and switching and making up of trains, and other railroad uses.

In executing said lease it is not proposed to define or limit the use for which said accretions may be used by the railway by any more specific or definite terms than those used in said ordinance."

Plaintiffs claim the city has no right or power so to dispose of the premises as related, and defendants claim the contrary.

On the final hearing, upon this agreed statement of facts, the court perpetually enjoined the said city, its council, etc., from leasing to said T., P. & W. R. Co., or other corporation or person, the portions of said street referred to, and from, in any manner, authorizing the occupation or obstruction of the same by laying of side tracks, tracks, depots, switching or making up trains, etc., as proposed by the facts admitted, and that the street be forever kept open and free from any and all uses by said ordinance contemplated; and that defendants pay the costs. The defendants appeal.

*Smyth & Hedge* for the plaintiffs cited *Wager* v. *The Railroad Company*, 25 N. Y. 526; *Ford* v. *The Railroad Company*, 14 Wis. 609; *Warren* v. *Lyons*, 22 Iowa, 351; *Street Railway* v. *Cumminville*, 14 Ohio St. 546; *Railroad Company* v. *Schurmier*, 7 Wall. U. S. C. C. 272; *Lackland* v. *North Missouri Railroad Company*, 31 Mo. 188.

*Charles H. Phelps*, city solicitor, and *B. J. Hall* for the defendants and appellants.

COLE, J. — This case is between the same parties, and relates to indentically the same property as the case of *Cook* v. *The City of Burlington*, 30 Iowa, 94; S. C., 6 Am. Rep. 649. In that case, the city claimed to hold the title to the said accretions, and that it had the exclusive right to control, alienate and convey the same for private purposes, and was about to convey the same to the T., P. & W. R. Co., to be held and used by it as its private property. This court held, that the right to make such unqualified disposition did not reside in the city, and that it was competent for a court of equity to restrain and control the attempt. It was also there said : " As the use, by the city, of this reservation and accretion, for the purpose of constructing thereon a railroad, would be a public use, and not in violation of the grant, we can see no legal objection to the city conveying the same to a railroad company for right of way, and such other public uses as justify the exercise of the right of eminent domain." In other words, and, as applied to the special facts of the case : Since, under our law, a railroad

company has the right to subject this property to certain servitudes and easements, in its behalf, by calling into exercise the power of eminent domain, the city might, by voluntary agreement, convey the same rights for the same purposes.

It will be observed, that the city, by its ordinance, proposes to authorize the execution of a lease, conveying for a term of years just such rights, in general terms, and none other, as it was declared, in the opinion above quoted, the city might do without legal objection. But the counsel for appellees, the plaintiffs, assail this doctrine in a vigorous and earnest argument, and cite, with liberal quotations therefrom, and as supporting their position, the following cases: *Williams* v. *The N. Y. Cent. R. Co.*, 16 N. Y. 97; *State* v. *The O. & M. R. Co.*, 7 Porter, 479; *Street Railway* v. *Cumminville*, 14 Ohio St. 523; *Lackland* v. *The No. Mo. R. Co.*, 31 Mo. 180; *Railroad Co.* v. *Schurmier*, 7 Wall. 272.

We do not stop to review these cases, nor to cite, even, the numerous cases holding the contrary doctrine, because we feel ourselves concluded by the course of decision and the number of cases in this court in accord with the holding in the case of *Cook* v. *City of Burlington*, *supra*. In the case of *Milburn* v. *Cedar Rapids, etc.*, 12 Iowa, 246, after citing a large number of cases from different States, wherein it had been held that the courts could not interfere to prevent the construction of railways in or upon the streets of cities, it is said: "The leading idea or argument running through these authorities is, that the dedication of streets in a city to public use is without restriction, as it respects the right of way, or mode of transit; that they are necessarily subjected to purposes far more extensive than common highways; that the very control given to city governments over their streets carries with it the power of modifying, abridging and enlarging their use in the way that shall best subserve the interest and business of the city; that the laying down and operating a railway track over a part of a street is not an unreasonable obstruction of its free use, nor incompatible with its original dedication, but rather a new and improved method of using the same, germane

to their principal object as a passage-way, marking the progress of civilization in this age, and to which the genius of the law readily accommodates itself, as should also the genius and habits of the people."

In the case of *The City of Clinton* v. *The Cedar Rapids & Mo. R. R. Co.*, 24 Iowa, 455, the right of a railroad company to lay down its track and operate its road through the streets of a city, even without its consent and without compensation, was recognized and applied. And in *Slatten* v. *The Des Moines Valley R. Co.*, 29 Iowa, 148; S. C., Western Jurist, vol. 5, p. 278, it was held, that a railroad company having the right of way granted to it by the city, along one of its streets and upon its established grade, and also the right to construct and operate a bridge across the Des Moines river, had the right to construct its road-bed so much above the grade of the street as was necessary to make a practicable approach to the bridge, and that it was not liable to a property holder on the street, whose property (hotel) was greatly injured by reason of the construction of the road-bed thus above the grade. The case of *Tomlin* v. *The Dubuque, Bellevue & Miss. R. Co.*, 32 Iowa, 106, is a very strong case in support of the doctrine we affirm in this case. There, the owner of a farm, fronting on the Mississippi river, was, by the construction of a railroad along the bank between high and low-water marks, cut off from access to the river and greatly damaged thereby; it was held, that he could not recover such damages from the railroad company. And the same doctrine was adhered to in *Ingraham, Kennedy & Day* v. *The C. D. & M. Ry. Co.*, 34 Iowa, 249. It has also been recognized in other cases: *The C. N. & S. W. Ry. Co.* v. *The Mayor of Newton, etc., ante*, 299.

In view of these adjudications by our own court, and the weight of authority in accord therewith, as well as the almost direct adjudication of this identical question between these same parties in the former case, we feel constrained to hold that the district court erred in making the injunction perpetual. It should have been dissolved and the action dismissed at the plaintiff's cost.                                    Reversed.