DIAMOND JO LINE STEAMERS *et al.,* Appellants, v. THE
CITY OF DAVENPORT.

**Eminent Domain:** CONDEMNATION: *Property impressed with trust in favor of public.* Land owned jointly by an individual and a corporation engaged in the transportation of passengers and property, and used for a landing and dock purposes, is not invested with a trust in favor of the public, the company not being required to maintain the same, and is not exempt from condemnation.

SAME. The fact that a city seeking to condemn a steamboat dock and adjoining land for the purpose of establishing a public landing place has agreed to grant a right of way across the land to a railroad company—a power which the city possessed —will not bar condemnation proceedings.

*Appeal from Scott District Court.*—HON. P. B. WOLFE, Judge.

WEDNESDAY, OCTOBER 2, 1901.

THIS proceeding was originally instituted by the city of Davenport to condemn certain real estate belonging to defendants for a wharf and public landing. Commissioners were duly appointed, who appraised the damages, against the protest of the Diamond Jo Line Steamers, and the land was taken by the city. The steamer company appeals.—*Affirmed.*

*Schmidt & Vollmer* and *Henderson, Hurd, Lenehan & Kiesel* for appellant.

*Davison & Lane* and *E. M. Sharon* for appellees.

WATERMAN, J.—The Diamond Jo Line Steamers is a corporation organized for pecuniary profit under the general corporation acts of the state. The nature of its business, as stated in its articles,

is "the transporting of persons and property on the Mississippi river and tributaries and the storage and forwarding of property." It owns jointly with the estate of one Richard Gray, deceased, a tract of land in the city of Davenport 208 feet wide on Front street, and extending south 148 feet, at which point it widens to the west 20 feet, and thence extends further south the full width of 228 feet to "low-water mark" of the Mississippi river, as the record before us discloses. Inasmuch as no question is made by counsel as to the south line of this property, and no showing with relation to the source of title, we shall accept the boundaries given. In our view of the case, it makes no difference whether the tract in dispute extends to low-water mark, as claimed, or only to high water mark, which this court has fixed as the limit of private ownership on navigable waters. *McManus v. Carmichael,* 3 Iowa, 1; *Haight v. City of Keokuk,* 4 Iowa, 199; *Ingraham v. Railroad Co.,* 34 Iowa, 249. On the north part of this tract is a building used by plaintiff for a warehouse. The south 114.60 feet is open ground, which was used as a landing and wharf for plaintiff's steamers. The city of Davenport is acting under a special charter, and has power to acquire land by condemnation for a public landing. Section 999, Code. In August, 1898, it instituted proceedings to condemn the south 114.60 feet of plaintiff's said tract, together with contiguous property belonging to others, for the purpose of making a public landing for boats. The Diamond Jo Line Steamers Company protested without avail against the proceedings. Damage was duly awarded, and the land taken. No question is raised as to the amount of the damages allowed. The contention on the part of the appellant is that the property sought to be taken was already so devoted to public service as to protect it from condemnation for another public use. The general rule on this subject is that, when property has been devoted to public use, in the sense

that will be later explained, it cannot be taken and applied to another conflicting public use by the exercise of the power of eminent domain, unless by authority of the legislature, expressly given or necessarily implied. *Chicago, St. P. & M. Ry. Co. v. Starkweather,* 97 Iowa, 159; 10 Am. & Eng. Enc. Law, 1052, notes. Here arises the principal question in dispute. Was this property devoted to public use, within the meaning of this rule? Before taking up the facts, it may be well to examine the law on the subject. It cannot be that all real estate is exempt from condemnation which the owner uses as a matter of choice for public benefit. If that were so, the real estate of an individual owner of a line of stage coaches or transfer wagons, if he were doing business as a common carrier, would be secure against the exercise of the right of eminent domain. Manifestly, this cannot be the law. "The true criterion by which to judge of the character of the use is whether the public may enjoy it of right or by permission only." *Olmstead v. Morris Aqueduct,* 47 N. J. Law, 311. "If the company may abandon its business, and sell its lands by an absolute title, without any responsibility to the state, its property is not so held as to be exempt from condemnation." Mills, Eminent Domain, section 45. "Where the property, by its use, will tend incidentally to benefit the public, affording additional accommodations for business and commerce, yet this is not sufficient to bring it within the rule of 'property devoted to public use,' especially where the property is to remain under private control, and no right to its use or to direct its management is conferred upon the public." *In re Eureka Basin Warehouse & Mfg. Co.,* 96 N. Y. 42. The mere use of the property for public purposes is, then, not enough to give the exemption. Such property, it seems, must be impressed with a trust in favor of the public so that the latter's use is of right, and not of grace; and this right must be one that cannot be defeated or destroyed at the owner's will. The most pertinent case to which our attention has been called is *New York, L. & W.*

*R. Co. v. Union Steamboat Co.,* 99 N. Y. App. 12 (1 N. E. Rep. 27), in which the plaintiff sought to take certain real estate belonging to the defendant and which was used by the latter in connection with the operation of its boats on the northern lakes. The same defense as here was set up,—that the real estate was already devoted to public use by the steamboat company. The court disposed of the issue as follows: "It is further contended that the property sought to be taken is already so devoted to a public use as to protect it from condemnation to any other public use. The proof shows that the Union Steamboat Company is a corporation created and existing under the laws of this state, and engaged in the business of carrying by water passengers and freight on the great lakes of the north, and using the property in question as a dock or wharf for the landing and delivery of a portion of its freight. In one sense, therefore, the property is already in use for public purposes, and quite as much so, it is contended, as it will or can be when devoted to the uses of the petitioner. Undoubtedly, the facts bring us to the inquiry whether the use of corporate property for the public convenience, and for purposes of a *quasi* public character, is sufficient to protect it from the grasp, under the right of eminent domain, of another corporation, whose property is held for similar public uses. The law did not confer upon the steamboat company the right to acquire land *in invitum* and that now held by it is held by purchase, and by the same tenure as that of a private individual. General authority conferred upon railroad corporations to acquire lands against the will of the owner is broad and comprehensive. In terms it covers all and excepts none. But because it could not be intended that the state, having authorized one taking, whereby the land became impressed under the authority of the sovereign with a public use, meant to nullify its own grant by authority to another corporation to take them again for another public use unless it so specially decreed, it has been ruled that lands so held and impressed with a public trust were not em-

braced in words of general authority. Were the rule other-
wise, this evil would result: A corporation (No. 1) having
the right of eminent domain takes land from a similar cor-
poration (No. 2) having the same right. No. 2 thereupon pro-
ceeds against to condemn it for its own use, and No. 1 retali-
ates, and so the absurd process goes on. It is clear that the leg-
islature never meant any such result, and hence, from any
general grant containing in its terms no word of exception,
there is necessarily excepted property already held upon a
public trust by the authority and under the ward and control
of the state. An examination of the cases in this court will
show that the exception has gone no further. * * * Is
the property here sought to be condemned so held? The
steamboat company was organized under the general law.
Under that law it was and might remain a private corpora-
tion. Its charter did not make it a common carrier, or im-
press upon it public obligation. If it became a common car-
rier, or assumed public obligations, they sprung from its
own voluntary action, but not from the will of the sovereign.
It might carry passengers or not, as it pleased. It might
transport freight for one firm or corporation or a single
individual, excluding all others, and confine its operations
within that narrow boundary; and practically and main-
ly such was the scope of its business. It might use the lands
here in question wholly for the purpose of building and
equipping the vessels of its line, and then apply them solely
to private uses. The test appears to be, not what it does or
may chose to do, but what, under the law, it must do, and
whether a public trust is impressed upon it. It does not so
hold its property impressed with a public trust unless its
charter puts that character upon it, and so that it cannot
be shaken off. If the law of its existence does not prevent
it from being a mere private corporation, from disregarding,
if it pleases, all public uses; if it may at any moment aban-
don its business, and refuse to run its propellers, and sell its
lands by an absolute title, without responsibility to the sov-

ereign, which is permitted by its charter; in short, if under. that charter it may be a purely private corporation,—its property is not so held as to be exempt from a taking under the law of eminent domain. Any other rule would be surrounded with difficulties. If the test should be made that of the actual use, or the character of the business done, and the benefit to the public realized, we shall never know where to draw the line, and must equally exempt individuals whose property is thus used; and in every case an uncertain and shifting question of fact would dominate the decision to be rendered," See, also, as in point, *N. Y. Cent. & H. R. R. Co. v. Metropolitan Gaslight Co.,* 63 N. Y. 326. It is held in this last case that the fact of a corporation's business being of a public nature is not sufficient to impress its real estate with a trust in favor of the public, and thus exempt it from being taken by the exercise of the power of eminent domain.

Now, looking to the facts, plaintiff company was incorporated under the general statutes as a carrier of freight and passengers. It acquired this real estate for use in its business. But it does not appear that the ownership or possession of such property was essential to the operation of its boats. It had a right to land them at the city of Davenport, using the public landing, or it could maintain a wharf boat in the river. Furthermore, it is not obliged under its articles to act as a common carrier longer than it sees fit to do so. Nor is it compelled to give the public any use of this property. There is no way to prevent plaintiff from inclosing this tract at any time it desires, and thus shutting the public out from its use. Clearly, the public use here is a matter of favor, and not of right. Another consideration of weight is that the title to this property is so held that it cannot be devoted absolutely and as of right to public use by plaintiff, for the estate of Richard Gray, a private owner, has an undivided one-half interest therein. Counsel for plaintiff cite a number of cases as sustaining their position. *Hickok*

*v. Hine,* 23 Ohio St. 523 (13 Am. Rep. 255), is not in point. All the others are cases where the owners from whom the property sought to be taken devoted it to public use as matter of right; and, furthermore,—and this is an important, if not controlling, consideration,—such owners had authority to condemn the lands for the uses to which they were put. We may say in this connection that the plaintiff in the case before us has no authority under the law to exercise the power of eminent domain. We do not wish to be understood as saying that no real estate is impressed with a public use save such as had been actually condemned. But it is important, if not essential, in determining the character of the use to which it is put, to ascertain whether the holder might have condemned it for such purpose; for it seems that only in the hands of one having such power can it be impressed with a trust in favor of the public. Our conclusion is that the real estate in question was subject to condemnation by the city.

II.    It is claimed on the part of the appellant that the real purpose of the city in condemning this real estate was not to make a public landing, but to procure a right of way across the tract for a railway line which was seeking to enter the city. It is urged that the extraordinary power of eminent domain cannot be resorted to for such ulterior purpose. A certain question was propounded to a witness by appellant's counsel for the purpose of developing this phase of the case. An objection to it was sustained, and plaintiff then made the following offer of proof: "The appellants offer to show by the testimony of witness that the city of Davenport, in the condemnation proceedings commenced by it for the purpose of appropriating the strip of land in front of the property owned by the Diamond Jo Line Steamers and the estate of Richard Gray, deceased, and lying southerly from a line parallel with the south line of the buildings upon said premises, and 25 feet therefrom, for the ostensible purpose of establishing a wharf and landing place for boats, in fact intended by said proceed-

ing to acquire said property with the purpose and intention of thereafter giving the Davenport & Rock Island Bridge & Railway Terminal Company and its successors the right to lay down upon said strip of ground its double tracks within 25 feet of the buildings of the appellants, and to be operated as a railway thereafter. Appellants propose further to show that all of said condemnation proceedings were under the direction and control of the officers and agents of the Davenport & Rock Island Bridge & Railway Terminal Company or its successors, and that certain of the expenses connected with such condemnation were paid or were to be paid by said railway company upon the completion of the condemnation proceedings thus commenced in the name of the city of Davenport." It will be noted that this offer does not include any evidence going to establish that the city did not need a public landing, and did not intend to devote this land to that purpose. The most that can be claimed for it is that appellant desired to show that the railroad company was interested in the matter, and when the city obtained title it intended to grant an easement or right of way across it to said railroad company. This the city had a right to do. See section 767 of the Code; *Cook v. City of Burlington,* 30 Iowa, 94; *Id.,* 36 Iowa, 357, with cases therein cited. The proceeding to condemn cannot be annulled because the city had agreed to do that which it had a legal right to perform. The judgment of the district court is in all respects correct, and therefore AFFIRMED.