### WHITTAKER v. ATLANTA, B. & A. R. CO.

(Circuit Court, N. D. Georgia. January 3, 1906.)

#### No. 64.

RAILROADS—CONSTRUCTION ON STREET—INJUNCTION.

Under Civ. Code Ga. § 2167, which authorizes any railroad company to lay its track along any street or highway with the written consent of the municipal or county authorities, a lot owner cannot enjoin the construction of a railroad along a street on which his lot abuts, with the consent of the city council, on the ground that the contemplated change of grade, also approved by the council, will result in incidental damages to his lot which have not been ascertained or paid; and the rule is the same whether the fee of the street is in the public or in the abutting lot owners, it being the settled law of the state that damages arising from the grading of a street by the municipality are recoverable only by an action at law.

In Equity.

A. H. Thompson and Spencer R. Atkinson, for complainant.
Rosser & Brandon, for defendant.

NEWMAN, District Judge. This is a bill filed by the complainant against the Atlanta, Birmingham & Atlantic Railroad Company, seeking to enjoin the defendant company from laying its track and constructing its railroad line along Morgan street, in the city of La Grange, Ga., upon which complainant's property abuts, and also to enjoin it from going upon one of the lots on Morgan street owned by the complainant. The defendant company is incorporated under

the general law of Georgia providing for the incorporation of railroad companies. One of the powers granted by the act of the Legislature, now embodied in section 2167, par. 5, of the Civil Code of Georgia, is:

"To construct its road across, along or upon, or to use any stream of water, watercourse, street, highway or canal which the route of its road shall intersect or touch:   Provided, no railroad shall be constructed along and upon any street or highway without the written consent of the municipal or county authorities, and whenever the track of any such road shall touch, intersect or cross any road, highway or street, it may be carried over or under, or cross at a grade level or otherwise, as may be found most expedient for the public good."

The municipal authorities of the city of La Grange have authorized the railroad company to construct its road upon and along Morgan street at the point in question. They have also approved the profile made by the engineer of the railroad company, which somewhat alters the grade of the street along complainant's property. Complainant expressly avers in his bill that it is the purpose of the railroad company to actually go upon his property. The defendant in its answer explicitly denies that it is its intention to actually enter upon any of the property of complainant with its work of construction until the value of the property to be taken shall have been ascertained according to law and compensation paid therefor. That part of the case, therefore, which involves the actual taking of any of complainant's property, can be readily disposed of by proper order. The important question for determination in the case is whether the railroad company has a right to proceed to lay its track along Morgan street, as proposed, without first ascertaining whether there would be damages to complainant's property, and, if so, paying for the same before the construction begins.

Counsel for complainant contend that there is a difference between the rights of abutting owners on streets as to matters of this sort where the title to the land embraced in the street is in the public, and where it is in the abutting owners to the center of the street. By an act of the Legislature of Georgia approved December 24, 1827, the justices of the inferior court of the county of Troup, as well as other counties mentioned in the act, were authorized "to purchase a lot of land for the county town." Laws 1827, p. 65. The justices of the inferior court of Troup county did purchase on March 5, 1828, lot of land No. 109 in that county. This they subsequently laid off into town lots, and the lots now in question were sold by the justices of the inferior court, and came down by proper conveyances to the complainant's intestate. By an act of the Legislature of Georgia approved December 16, 1828, county commissioners were appointed for the town of La Grange, and provision made for their successors. By this act it was also provided that:

"Said commissioners and their successors in office shall have corporate jurisdiction over the lot of land on which the said town is situated, and all other public lots that may hereafter be laid out in said town; and shall have exclusive government of and control of all patrols and persons liable to work on the roads within the same." Laws 1828, p. 152.

Unquestionably by this last act the government and control over the land embraced within the town of La Grange, which is a part of the original land lot No. 109, was vested in the commissioners of the town of La Grange and their successors in office, now the mayor and council.

It is urged that where land is platted and sold by the justices of the inferior court abutting streets, as was done in this instance, the fee to the center of the street passes to the purchaser of the lots, just as it would if an individual had platted the land and sold it off in lots. It is then argued that in consequence of this Whittaker's intestate owned the land to the center of Morgan street in front of his property, subject only to the public use as a street, and that an additional burden cannot be put upon it without compensation being first paid for its use. It is true that some authorities draw a distinction as to the right to put an additional burden upon the street, other than that of the ordinary public use as a highway, when the title to the street is in the abutters, and when it is in the state or in the city. I do not know that any such distinction should exist in Georgia. The Legislature certainly made none in the act authorizing railroads to use streets longitudinally, as quoted above; and the ground upon which the cases rest, authorizing the construction of street railroads and steam commercial railroads entering a city from other cities along public streets, is that it is a proper use to which a public highway may be put, in the legislative discretion. In Barney v. Keokuk, 94 U. S. 324, 24 L. Ed. 224, in the opinion of the court by Mr. Justice Bradley (pages 340–342, of 94 U. S. [24 L. Ed. 224]) the question is discussed in this way:

"On the general question as to the rights of the public in a city street, we cannot see any material difference in principle with regard to the extent of those rights, whether the fee is in the public, or in the adjacent landowner, or in some third person. In either case the street is legally open and free for the public passage, and for such other public uses as are necessary in a city and do not prevent its use as a thoroughfare, such as the laying of water-pipes, gas pipes, and the like; and according to the laws of Iowa (which must be taken to govern the case) it may be occupied by those improved iron ways for public passage which modern skill has devised, and which the advance of general improvement requires. It cannot be denied that horse railroads have contributed immensely to the public convenience in furnishing a rapid, cheap, and convenient means of communication between different parts of large towns, and have greatly promoted their increase and growth in wealth and population. By the accommodation which they afford, the citizen can reside miles from his shop or place of business. Though attended with some inconveniences, they have greatly added to the efficiency of the public thoroughfares, and have more than doubled their capacity for travel and transportation. So other railways coming to cities add greatly to their population and wealth, and furnish greatly increased facilities of communication with other portions of the country. In Iowa, by the act called the 'Right of Way Act,' found in the Code of 1851 [section 735], it is declared that 'the county court may also grant licenses for the construction of any canal or railroad, or any macadamized or plank road, or any other improvement of a similar character, or any telegraph line, to keep the same up for a period of not exceeding fifty years, and to use for this purpose any portion of the public highway or other property, public or private, if necessary: Provided, such use shall not obstruct the highway.' Revision 1860, Iowa, p. 206. By the construction given to this act by the Supreme Court of the state,

railroads, especially when located and constructed under municipal regula-
tion and control, are not regarded as obstructions to a highway in the legal
sense, nor as creating, when laid thereon, any injury to the proprietors of
the adjacent lands, for which they are entitled to compensation. The cases
referred to by the Circuit Court (which are given below) abundantly demon-
strate this conclusion, and no elaborate discussion of the subject is required
from us. See Milburn v. Cedar Rapids, 12 Iowa, 249–260; Clinton v. Cedar
Rapids & Mo. Railroad Co., 24 Iowa, 455; Tomlin v. Dubuque Railroad Co.,
32 Iowa, 106, 7 Am. Rep. 176; Chicago, Newton & S. W. Railroad Co. v.
Mayor, etc., of Town of Newton, 36 Iowa, 299; Cook v. City of Burlington, 36
Iowa, 357; Clinton v. Clinton & Lyons Railroad Co., 37 Iowa, 61; Ingram et
al. v. Chicago, Dubuque & Minn. Railroad Co., 38 Iowa, 669. The cases
cited, it is true, are generally those in which the fee of the streets was in
the cities respectively, as is commonly the case in Iowa. But in Haight's
Case, in 4 Iowa, 199, the very street now in question was under consideration,
and the plaintiff has the same title as that of the plaintiff in the present
case; and the principles laid down in all the later cases apply as well where
the title of the soil is in the adjacent proprietor as where it is in the
city or a third party. And, as before remarked, we can perceive no well-
founded difference in principle between the one and the other as to the rights
of the public."

As the law of Iowa seems to have been quite similar to the law of
Georgia, this discussion of the question is particularly applicable.
I should not be disposed to hold that Whittaker's intestate had the
title to the soil to the center of Morgan street in front of his property;
but, if he had, I am inclined to think that it would not make any differ-
ence as to the merits of the question now presented.

It is thoroughly settled in Georgia, as I understand it, that a city
may grade a street, although consequential damages may result, with-
out first paying compensation therefor. Injunction will not issue
to prevent the public from grading a highway, but the abutting
property owner, claiming to be injured, will be left to his action at
law for damages. Moore v. City of Atlanta, 70 Ga. 611. There
seems to be no difference in principle between a city doing the grad-
ing itself and allowing it to be done by a railway company. In the
present case the city authorities have approved a profile showing the
changes in grade to be made, and it must be assumed that they con-
sidered the changes which are to be made by cutting down somewhat
along the complainant's lots to be proper changes for public purpose
and in the public interest. Consequently the same rule would apply
as if the city was itself having the work done. In Atlantic & Bir-
mingham R. R. Co. v. Mayor and Council of Montezuma, 122 Ga.
1, 49 S. E. 738, the Supreme Court of the state recognizes the right
of this same railroad company to construct its track lawfully in a
street, although in that case it appears to have been considered that
the use to which it was desired to put the street was not the ordinary
longitudinal use for its tracks, because it obstructed and practically
closed up the street. It is said in that case that:

"Civ. Code, § 2167, par. 5, permitting the longitudinal use of a street,
must be considered to authorize only a lawful use, and not the creation and
maintenance of a nuisance thereon."

If there can be a lawful use of a street for a railroad track, such
lawful use must embrace what is proposed in this case; that is, the

construction of one track longitudinally along the street. The railroad company could not do less than this, and, if it is allowed to use the street at all, it certainly must be allowed to use it for the purpose contemplated here. It seems to have been the intention of the Legislature to allow the city and county authorities to control the matter of permitting railroads to be constructed along public streets in cities and towns and roads in the country, respectively. It must be assumed that the municipal authorities of the city of La Grange would not have granted the right to construct a railroad along Morgan street unless it was for the public interest. A discretion is vested by law in the city council, and the courts will not interfere unless there is a manifest abuse of this discretion, or unless some constitutional right of property owners is violated. Neither of these is satisfactorily shown here.

The injunction prayed, so far as it seeks to prevent the use of the street in front and along the side of complainant's property for the laying of track, must be denied, and the restraining order heretofore granted to that extent dissolved. As the railroad company denies any purpose or intent of actually going upon the land in question without having the damages ascertained and paid, the injunction seeking to prevent that should also be denied, and the restraining order dissolved, but, as to this, with the right of complainant to move at any time for a renewal of the restraining order, should the defendant company take any further steps to go upon any of the property in question without first complying with the law with reference to the ascertainment and payment of proper compensation.