GREAT NORTHERN RAILWAY COMPANY, Respondent v.
CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA
RAILWAY COMPANY et al., Appellants
(99 N.W.2d 439)

(File No. 9738.   Opinion filed November 24, 1959)

**Churchill, Churchill & Sauer,** Huron, **Edgar Vanneman, Jr.,** Chicago, Ill., for Defendants-Appellants.

**Anthony Kane, John C. Smith,** St. Paul, Minn., **H. F. Chapman,** Sioux Falls, for Plaintiff-Respondent.

HANSON, P. J.   In this eminent domain proceeding the Great Northern Railway Company seeks to acquire an easement across the right of way owned by the Omaha Railway Company and leased by the Chicago and North Western Railway Company. The issues were submitted to the trial court on defendants' motion to dismiss the complaint. The motion was denied. Thereafter the amount of damages was stipulated and defendants have appealed from the order denying their motion to dismiss and from the judgment.

For clarity the plaintiff-respondent will be referred to as "plaintiff" or "The Great Northern" and defendants-appellants will be referred to as "defendants" or "The Omaha".

The tracks of the Great Northern and the Omaha parallel each other as they extend easterly out of the City of Sioux Falls. The Great Northern owns two tracts of land of approximately 51 acres situated within the corporate limits of the city. This land is cut off and separated from the Great Northern right of way only by the tracks and right of way of the Omaha. The land was formerly used by the Great Northern as a source of gravel. In its petition for condemnation the Great Northern alleges that "said gravel has now been exhausted and plaintiff desires to develop said tracks for the location thereon of industries or industrial enterprises; that in order to so develop said property it is necessary that plaintiff establish rail service to said property by the construction of an industrial or spur track from its line of railroad as presently located and constructed across the single track and right of way of the Chicago, St. Paul, Minneapolis and Omaha Railway Company * *. That it is necessary for the maintenance, operation and convenient use of its railroad, in order to accomplish the object of its incorporation, for plaintiff to cross and intersect its railroad with the railroad owned by defendant * * * said spur or industrial track to be used to serve industries or industrial enterprises * * * such use being a public use under and by virtue of the laws of the South Dakota."

Upon refusal of the defendant companies to grant an easement across their right of way the Great Northern, by application, invoked the jurisdiction of the South Dakota Public Utilities Commission under the provisions of SDC 28.1101 and 52.0801(6). On May 7, 1956, the Commission approved the location, plans and specifications of said crossing and authorized its construction.

On defendants' further refusal to grant an easement the Great Northern filed a second application with the South Dakota Public Utilities Commission under the following provisions of our code:

"52.0825 Right of way for spur tracks. Every railroad company owning, leasing, or operating a line of railroad in this state shall have power to condemn property for the right of way of spur tracks designed to reach or serve industries or industrial enterprises, such as mills, mines, smelters, factories, warehouses, and other manufacturing and industrial enterprises, for which regular scheduled passenger or freight train service is not performed, and for transportation for which only a switching charge, if any ,is made, upon obtaining the consent of the Public Utilities Commission to the construction of such spur tracks, and the construction of such spur tracks, when the consent thereto of the Public Utilities Commission has been obtained, is hereby declared to constitute a public use.

"Any railroad company desiring to condemn property for the right of way of a spur truck designed for the purpose mentioned in this section shall file with the Public Utilities Commission a petition setting forth the proposed line of such spur track, the purpose for which it is intended, and the particular description of the land to be taken by condemnation proceedings, together with the name of the owner of such land and his place of residence, if known to the person verifying such petition. Such petition shall be verified by an officer, agent, or attorney of the railroad company filing the same, who shall have personal knowledge of the facts therein stated.

"52.0826 Spur track: hearing on; notice. Upon the filing of a petition by any railroad company, as set forth in section 52.0825, the Public Utilities Commission shall set a time and place for the hearing of the same, and shall publish in at least two issues of some newspaper of general circulation, printed and published in the county in which the land sought to be condemned is situated, a notice of such hearing, which shall contain a description

of the land sought to be condemned, together with a statement of the purpose for which such condemnation is desired. The first publication of such notice shall be not less than ten days before the date set for the hearing upon such petition. If no newspaper be published in the county in which the land is situated, such notice shall be published in some newspaper of general circulation printed and published at the city of Pierre. The Public Utilities Commission shall also cause a copy of such notice to be mailed to the owner of the property sought to be condemned, at his post office address or place of residence as disclosed by such petition, or at such other address as the Public Utilities Commission shall deem most likely to give him notice of the hearing upon such petition.

"52.0827 Spur track: order of Commission for condemnation; powers of company. Upon the hearing upon the petition, the Public Utilities Commission shall take evidence as to the necessity for the construction of such spur track, and may satisfy itself in such further manner as it may deem advisable in regard to the necessity for the construction of such spur track and for the condemnation of property for the right of way therefor, and if the Public Utilities Commission shall be of the opinion that a public necessity exists for the construction of such spur track and for the condemnation of property for the right of way therefor, such Commission shall adopt a resolution and cause the same to be entered upon the minutes of the Commission, giving the consent of the Public Utilities Commission to the construction of such spur track and to the condemnation for the right of way therefor of the land described in such petition. Upon the passage of such resolution, the petitioning railroad company shall possess the power to take by condemnation proceedings, as provided by law and the rules of practice and procedure, the property

desired for the construction of such spur track and covered by such resolution."

After a hearing on plaintiff's second application the Commission entered an order on October 18, 1957, reaffirming its approval of the location, plans, and construction of the proposed crossing. It further found that public necessity presently did not exist for the construction of the proposed spur track within the meaning of the foregoing sections of our code. No appeal was taken from either order of the Commission.

Defendants allege there is no public necessity for the crossing plaintiff seeks and such crossing would be for the private use and benefit of plaintiff and not for a public use. They contend that before the plaintiff may secure an easement across their right of way by condemnation it is first necessary and jurisdictional for plaintiff to secure a resolution from the South Dakota Public Utilities Commission that public necessity requires the installation of such proposed crossing and spur track in accordance with SDC 52.0825. In view of our constitutional and statutory provisions governing the subject we believe defendants' contentions are without merit.

According to Art. XVII, § 16, of the South Dakota Constitution "Every railroad company shall have the right with its road to intersect, connect with, or cross any other railroad". This constitutional provision has been implemented by SDC 52.0801(6), according to which every railroad corporation within this state has power "To cross, intersect, join, and unite its railroad with any railroad heretofore constructed, at any point on its route and upon the grounds of such railroad corporation, with the necessary turnouts, sidings, and switches, and other conveniences in furtherance of the objects of its connections. And every corporation whose railroad is or shall be hereafter intersected by any new railroad shall unite with the owners of such new railroad in forming such intersections and connections, and grant the facilities aforesaid; and if the two corporations cannot agree upon the amount of compensation to be made therefor, or the points and manner of such

crossings and connections, the same shall be ascertained and determined by the Public Utilities Commission * * *."

██ By virtue of these constitutional and statutory provisions a showing of public necessity is not a necessary prelude to the right of one railroad to cross another. When two railroads cannot agree on a crossing of one by another it is the function of the Public Utilities Commission to determine (1) the point of crossing, (2) the manner of crossing and (3) the compensation to be made therefor. Our Commission correctly concluded it had no authority under SDC 52.0801(6) to inquire into, or determine, "whether" the crossing should be made. The question of public necessity for the crossing was predetermined by the legislature. Railroad and Warehouse Comm. v. Peoria & P. U. Ry. Co., 267 Ill. 462, 108 N.E. 655; In re Eastern Wisconsin Ry. & Light Co., 127 Wis. 641, 107 N.W. 496. "Under the law of this state, the question of the existence of the necessity for exercising the right of eminent domain, where it is first shown that the use is public, is not open to judicial investigation and determination, * * * the necessity and expediency of exercising the right of eminent domain are questions political, and not judicial. The determination of those questions belongs to the sovereign power. The legislative determination is conclusive, and the courts have no power to review, unless so authorized. While the Legislature may itself exercise the right of determining the necessity for the exercise of the power to condemn, it may, unless prohibited by Constitution, delegate the power to public officers or to private corporations established to carry on enterprises in which the public are interested, and their determination that a necessity exists is conclusive." Chicago, M. & St. P. Ry. Co. v. Mason, 23 S.D. 564, 122 N.W. 601, 603.

██ Except for the crossing over the Omaha tracks plaintiff owns all of the property upon which the proposed spur track will be built. No actual "taking" of private property in the usual sense is involved. Consequently, the provisions of SDC 52.0825, 52.0826, and 52.0827 are not applicable and the proceedings taken under them were unnecessary. The crossing of one railroad by another does im-

pose a burden upon the road crossed. It is a burden, however, which every railroad in this state consents to and is obligated to assume. "The general rule is that every railway company acquires its franchises, rights and privileges upon condition that its tracks may be crossed by the tracks of other railway companies. Rights of way are acquired subject to the right of the public to have other roads, and whenever it is necessary for one railway company in the construction of its line to cross the right of way of another company, the right to cross that company's line, subject to certain conditions hereafter referred to, always exists. This right is based on public interest and necessity. The rights of the public are superior to the interests of any particular railroad company, and the public have a right to demand the construction of railroads across the lines of other railway companies so long as the rights of the companies crossed are not materially and unlawfully impaired. The right which any particular company acquires to its line and right of way is not, in this sense, exclusive; it is taken subject to the exercise of the right of eminent domain in favor of the public or public corporations * * *". Vol. 3, 3rd Ed., Elliott on Railroads, § 1595, p. 412.

■■ Article VI, § 13 of our Constitution declares, by implication, that private property shall be taken only for public use. In each instance the question of public use is one for the courts. Chicago, M. & St. P. Ry. Co. v. Mason, 23 S.D. 564, 122 N.W. 601; Illinois Cent. R. Co. v. East Sioux Falls Quarry Co., 33 S.D. 63, 144 N.W. 724. The controlling criterion is the character of the use which will be made of the property after it has been taken. Here we must consider the character of the use which will be made of the spur track after construction. Plaintiff's motives for wanting the spur track are immaterial in the absence of an allegation of bad faith, oppression, or other possible limiting factor on the right of one railroad to cross another.

After construction the spur track will become an integral part of the Great Northern Railway. As such it will serve a public use. "In its very nature a spur track cannot serve the public in the same manner as an extension of

the main line because it is not intended for passenger service but its use is still public on the part of the industry, or several industries, which it serves in that such industries may then be reached by the public through a common carrier to the fullest extent. The service of any particular spur is denied to no industry which it is reasonably feasible for the spur to serve. Thus it must be said that use of a track serving industries is a public use, although not precisely the same quality as that which pertains to an extension of the main line of a railroad." Chicago Great Western Ry. Co. v. Jesse, 249 Minn. 324, 82 N.W.2d 227, 231; State ex rel. Oregon-Washington R. & Nav. Co. v. Superior Court, 155 Wash. 651, 286 P. 33.

All railways in this state are declared to be "public highways, and all railroad and transportation companies are declared to be common carriers and subject to legislative control." Art. XVII, § 15, S.D. Constitution. The spur track will accordingly come under the control of the Public Utilities Commission and be subject, at all times, to legislative control. The right of the public to use the same is thereby assured.

Except for the crossing over defendants' right of way the proposed spur will extend to and be constructed upon vacant and unimproved property. This is not a limiting or prohibitory factor. Transportation facilities have traditionally preceded industrial location and development. In the settlement of our state the railroads more often than not preceded and governed the location of towns and industries. In principle we see no distinction here.

Affirmed.

All the Judges concur.