MRS. E. O. ABOLT, appellant, v. CITY OF FORT MADISON et al., appellees.

No. 50122.

(Reported in 108 N.W.2d 263)

MARCH 7, 1961.

McManus & McManus, of Keokuk, and Joseph L. Phelan, of Fort Madison, for appellant.

Roy W. Deitchler, City Attorney, for the City of Fort Madison; Napier & Fehseke and Pollard, Lawse & Deitchler, all of Fort Madison, for City of Fort Madison, Department of Public Docks of the City of Fort Madison and Park Commission of the City of Fort Madison; Pollard, Lawse & Deitchler, of Fort Madison, and Herrick, Langdon & Sidney, of Des Moines, for Walter Caldwell Company, appellees.

GARFIELD, C. J.—This is a suit in equity by Mrs. E. O. Abolt, a resident property owner, to restrain defendants City of Fort Madison, Department of Public Docks of the city, and

Walter Caldwell Company, from proceeding under a lease from the dock board of the city to Caldwell of 2.2 acres of what is known as Riverview Park for the purpose of constructing and operating dock and warehouse facilities along the Mississippi River. Following trial to the court relief was denied and plaintiff has appealed. For convenience we refer to the Caldwell Company, a partnership, as Caldwell.

Plaintiff owns a building and the ground on which it rests, facing south at 779½ Avenue H in defendant city. She lives in part, and rents for storerooms part, of the downstairs. Upstairs are rented apartments. There are no laid out lots between plaintiff's property and the Mississippi River which flows generally west at the south edge of the city. Just south of Avenue H (which is also U. S. Highway 61 and Iowa Highway 2) and parallel to it are double tracks respectively, of the Burlington and Santa Fe railroads.

The north line of the tract leased to Caldwell is 50 feet south of the Santa Fe tracks. It extends from the south end of Seventh Street on the east to the south end of Eighth Street on the west. The south line is 200 feet riverward from the north line. The lease also grants an easement along that part of the river front south of the above tract, from the water edge north a distance of 66 feet, for the purpose of constructing and operating dock facilities on the river. Also an easement between the tract first described and the river front strip for an underground pipe line and overhead conveyor and for road purposes. Distance from the south line of the north tract to the river is roughly 200 feet. Thus the north and south width of the ground between the Santa Fe tracks and the river approximates 450 feet at this point.

The lease obligates Caldwell to construct on the property immediately adjoining the river dock facilities and to operate them as a public dock with reasonable charges. Term of the lease is 50 years, renewable for 10-year periods if both parties agree. Rental is $480 a year. Caldwell plans to construct on the east part of the tract farthest from the river two round concrete tanks, about nine feet high above ground, for storage of molasses, a small scale-office and boilerhouse. He also plans to build on

the tract a storage building about 200 x 240 feet, not over about 20 feet high. Defendants insist these buildings will be used as a public bonded warehouse.

Plaintiff does not complain here over use of the river front for a public dock but does complain about use of the leased ground for storage of molasses.

The lease was made December 8, 1954. The petition in this action was filed April 6, 1955. The lease was amended May 19, 1955, by striking a provision that lessee will operate on the leased tract "a generally wholesale merchandising business" and inserting in lieu thereof an agreement that it will operate, under chapter 543, Iowa Code, 1954, a bonded warehouse or warehouses for agricultural products and such facilities, including a public scale, as are reasonably necessary or proper for such operation. Both the lease and the amendment to it provide lessee will not permit on the premises any operation which creates a nuisance, the handling of goods of a highly explosive nature, or any unlawful use.

Other respects in which the lease was amended need not be stated. Caldwell testifies he intended at the time the original lease was made to use the round tanks for public warehousing of molasses and to operate a bonded warehouse on the premises. The chairman of the dock board says it was originally understood Caldwell would maintain a public warehouse as well as a public dock. Caldwell explains the reference in the original lease to "a generally wholesale merchandising business" was because of objection to his conducting any retail business, although he says he never had any thought of doing so.

The entire area of about 30 to 32 acres south of Avenue H along the river, extending east and west for several blocks, is known as Riverview Park.

I. The City of Fort Madison was laid out and platted pursuant to an Act of Congress of July 2, 1836, containing this language: "And provided further, That a quantity of land of proper width, on the river banks, at the towns of Fort Madison, Belleview, Burlington, Dubuque and Peru, and running with the said rivers the whole length of said towns, shall be reserved from sale, (as shall also the public squares) for public use,

and remain for ever for public use, as public highways, and for other public uses."

Cook v. City of Burlington, 30 Iowa 94, 97, 98, 6 Am. Rep. 649, says of this provision: "This statute operated as a qualification upon the title of the government. * * * After its passage and the sale of lots thereunder, the public acquired a right in this reserved strip for a highway and other public uses; and to the extent of the right acquired by the public, that of the government was limited and controlled. The absolute power of disposition was gone. The use was dedicated to the public. The act of congress making this dedication was in the nature of a contract which could not afterward be abrogated or repealed." (Citations)

We think the congressional Act reserves to public use a quantity of land of proper width on the riverbank. The city took the land for the same purposes for which the government held it, subject to the same trusts and affected by the same conditions. The city may not devote the land referred to in the statute to private uses nor dispose of it except for public uses. Cook v. City of Burlington, supra.

II. It is not claimed the land leased to Caldwell nor that on which an easement is granted is part of the land directly reserved for public use by the Act of 1836. Plaintiff contends the land referred to in the lease to Caldwell was added by what she calls natural and artificial accretions to the land referred to in the Act of Congress and is therefore subject to the same reservation to public uses. Reliance at this point is upon Cook v. City of Burlington, supra, at page 99 of 30 Iowa, and some other precedents.

To constitute an accretion there must be a gradual and imperceptible addition of soil to the shore line by action of the water to which the land is contiguous. Meeker v. Kautz, 213 Iowa 370, 372, 239 N.W. 27, 28, and citations; Rupp v. Kirk, 231 Iowa 1387, 1388, 4 N.W.2d 264, 265; 93 C. J. S., Waters, section 76a; 56 Am. Jur., Waters, sections 476, 477.

Solomon v. Sioux City, 243 Iowa 634, 639, 51 N.W.2d 472, 476, holds a riparian owner is not precluded from acquiring land by accretion by the fact the accumulation is brought about

partly by artificial obstructions erected by third persons, where the riparian owner has no part in erecting the artificial barrier. See annotation, 134 A. L. R. 467, 468.

There is little, if any, showing the land included in the lease to Caldwell was created by accretion. A well-qualified witness says, "All the area referred to as Riverview Park * * * was man-made fill into the river. * * * For a long time it was a dump, cans and rubbish the merchants would haul down and dump at the river edge. * * * There was no deposit of silt there from action of the river." Plaintiff herself testifies, "There is quite a bit of fill ground there." Other evidence is to like effect.

Nevertheless we will assume in plaintiff's favor, without so holding, the land included in the Caldwell lease partakes of the same character as the land reserved for public use in the Act of 1836. We do not understand defendants contend any of this river front ground may be devoted to a private use even though they say it is largely, if not wholly, man-made fill.

III. The vital question is whether proposed use of the land referred to in the Caldwell lease is, under the terms of the amended lease or as shown by the evidence, a public use. We hold it is.

As previously explained, the amended lease obligates Caldwell to construct and operate public dock facilities for which the charges will be reasonable and a bonded warehouse or warehouses, under the provisions of chapter 543, Code, 1954, for agricultural products and such facilities as are reasonably necessary or proper for such operation. Further, as stated, plaintiff does not complain about use of the river front for a public dock. And plaintiff's counsel, in effect, conceded in argument that use of the ground for a bonded warehouse would also be a public use. Plaintiff contends, however, the amended lease is a mere guise under which Caldwell plans to devote the leased ground to a private use.

Caldwell doubtless does expect to profit from the undertaking. He is not engaged in a charitable enterprise. But it does not follow from this that the contemplated use is a private one. Projects devoted to a public use are frequently undertaken

with a view to private benefit. Carroll v. City of Cedar Falls, 221 Iowa 277, 285, 261 N.W. 652, and citations; Sisson v. Board of Supervisors, 128 Iowa 442, 454, 455, 104 N.W. 454, 70 L. R. A. 440; Belovsky v. Redevelopment Authority, 357 Pa. 329, 54 A.2d 277, 172 A. L. R. 953, 962; 18 Am. Jur., Eminent Domain, section 41; 29 C. J. S., Eminent Domain, section 31a, page 825.

We think it is not shown the amended lease is a subterfuge. Caldwell has no right to engage in any operation on this ground except within the terms of the lease. And if plaintiff's suspicions materialize she will be entitled to apply then for injunctive relief.

Defendant city created its department of public docks by vote of the qualified electors as provided by section 384.1, Codes, 1954, 1958. The dock board was required to prepare or cause to be prepared a plan for improvement of its water front, making provision for the needs of commerce and shipping and for use of the river front by others for industrial and manufacturing purposes and providing for the construction of such docks, warehouses and other named structures as the board may deem necessary. Section 384.3(1).

The dock board has the power and duty to purchase or condemn by eminent domain such lands as may be necessary for use in providing any publicly owned dock, warehouse or other structure as provided for in the plan adopted by the board. Section 384.3(2).

"Leases of such property may be made for such purposes, including industrial and manufacturing purposes, upon such terms and conditions, and for such period of time as, in the exclusive judgment of the dock board, shall be for the best interests of the city * * *." Section 384.3(3).

The dock board has power to make general rules and regulations for carrying out the plans prepared and adopted by it for building and operation of all structures adjacent to the water front, whether done by the board or by others. Section 384.3(6).

It would seem any use for which a public body, such as the dock board, may rightfully exercise the power of eminent domain is a public use. Such power may be exercised only

where a public use is involved. Cook v. City of Burlington, supra, 30 Iowa 94, 105, 6 Am. Rep. 649; Cook v. City of Burlington, 36 Iowa 357, 363, 364; Chicago, M. & St. P. Ry. Co. v. Starkweather, 97 Iowa 159, 161, 162, 66 N.W. 87, 31 L. R. A. 183, 59 Am. St. Rep. 404; Diamond Jo Line Steamers v. City of Davenport, 114 Iowa 432, 439, 87 N.W. 399, 54 L. R. A. 859; Carroll v. City of Cedar Falls, supra, 221 Iowa 277, 285, 261 N.W. 652; City of Emmetsburg v. Central Iowa Tel. Co., 250 Iowa 768, 778, 96 N.W.2d 445, 451.

The first Cook case, supra, says of the reservation in the same Act of Congress under which Fort Madison was laid out (at page 105 of 30 Iowa): "As the use, by the city, of this reservation and accretion, for the purpose of constructing thereon a railroad would be a public use, and not in violation of the terms of the grant, we can see no legal objection to the city conveying the same to a railroad company for right of way, *and such other public uses as justify the exercise of the right of eminent domain.*" (Emphasis added.)

It is stipulated that use of the strip between Avenue H and the river for such railroad purposes as are the proper subject for the exercise of eminent domain is a public use within the terms of the 1836 Act of Congress. We see no reason why this is not true of purposes other than railroad purposes for which eminent domain may be exercised.

It is true legislative determination that lands may be acquired by eminent domain for certain uses, as here for public docks or warehouses, is not conclusive that such uses are public. But the initial determination is ordinarily for the legislature and courts will not interfere with its determination that uses are public unless it is clear, plain and palpable they are private in character. Such legislation has the same presumption in its favor as exists where constitutionality of a statute is challenged. Reter v. Davenport, R. I. and N. W. Ry. Co., 243 Iowa 1112, 1118, 1119, 54 N.W.2d 863, 867, 35 A. L. R.2d 1306, and citations; Ermels v. Webster City, 246 Iowa 1305, 1307, 71 N.W.2d 911, 912, and citations.

There is insufficient basis for holding unconstitutional the legislative determination that use of water front for public

docks or warehouses is a public one. This would be the effect
of a decision that a use is private for which the legislature
has said the power of eminent domain may be exercised. City
of Emmetsburg v. Central Iowa Tel. Co., supra, 250 Iowa 768,
778, 96 N.W.2d 445, 451. Nor is it argued section 384.3(2)
is unconstitutional.

City of Fort Madison v. Bergthold, 250 Iowa 94, 93 N.W.2d
112, holds valid an ordinance authorizing the dock board to
lease part of the water front for the erection and use of various
structures. Defendant owned a boathouse for use of small boats
and was charged with violating the ordinance by operating it
without a lease from the dock board. He contended the ordi-
nance was void as purporting to authorize a lease to private
individuals for private purposes. We rejected the contention,
seemingly on the ground a lease for such a purpose would be
for a public use.

Gurney v. Minneapolis Union Elev. Co., 63 Minn. 70, 65
N.W. 136, 30 L. R. A. 534, holds use of ground for a public
grain elevator and warehouse constitutes a public use. Also,
because a railroad which acquired the ground by condemnation
could devote it to such use, its lessee could do likewise. The
holding on this second point accords with that in the second
Cook v. City of Burlington, supra, 36 Iowa 357, 363, 364, that
the city could convey to a railroad by lease the same rights
which might have been acquired by eminent domain. Other
precedents to like effect need not be cited since this is expressly
provided by Code section 384.3(2) and (3), heretofore referred
to.

The leading case of Munn v. Illinois, 94 U. S. 113, 24 L. Ed.
77, holds use of property for storage of grain in public ware-
houses is a public use so the state legislature might constitu-
tionally fix maximum rates for such storage.

▆▆ The only decision plaintiff cites for its contention the
contemplated use of this land is not a public one is Ferguson v.
Illinois Central R. Co., 202 Iowa 508, 210 N.W. 604, 54 A. L. R.
1. We think it is not in point. It holds void an order of the
state board of railroad commissioners, now the commerce com-
mission, requiring the railroad to furnish plaintiff a site on its

636

right of way for a coal shed for storage and sale of coal for plaintiff's private gain, and fixing rental therefor, as a taking of the railroad's property for a private use. The opinion properly recognizes that public use is not synonymous with public benefit—many private uses benefit the public. Also that use of a public warehouse for receiving and storing articles of commerce, or grain indiscriminately received from the public, might well be a public use. Munn v. Illinois and Gurney v. Minneapolis Union Elev. Co., both supra, are characterized as proper holdings.

Provisions of Code chapter 543 under which Caldwell agrees to operate a warehouse for agricultural products are too long to explain in detail. They require a license, bond, receipt of products without discrimination between persons, just, reasonable and nondiscriminatory rates and prescribe penalties for violation of any provision of the chapter or failure to comply with any lawful order of the commerce commission. Applicability of this chapter to the present case further distinguishes it from Ferguson v. Illinois Central R. Co., supra.

IV. One proposition for reversal is that the court erred in not holding the use contemplated by Caldwell is contrary to uses to which public parks are subjected and particularly the land subject to the trust contained in the Act of 1836. A brief point states that dedication of a public park need not be in writing or formal, so long as the intent to dedicate, setting aside for public use and acceptance by the public is present. It is stipulated that since about 1915 trees and grass were planted on the tract in controversy, a concrete walk was built along the river, and, as stated, the land is part of what is known as Riverview Park, used for park, parking lot and recreation purposes.

It is doubtless true the proposed use of this ground by Caldwell is not such as public parks are devoted to, especially where they were dedicated by private owners. It may be conceded, without so holding, there can be an informal dedication of ground for a public park. But the tract in controversy here has never been dedicated for the particular use of a public park. It has never been in private ownership. When the Act of 1836

was passed it was owned by the United States. Iowa was then a territory.

The Act under which the city was laid out, as stated, provides "a quantity of land of proper width * * * shall * * * remain for ever for public use, as public highways, *and for other public uses.*" (Emphasis added.) The only particular public use referred to is public highways. It is generally held highways which are part of the city street system cannot be laid out through public parks except by resort to eminent domain. Annotations, 18 A. L. R. 1246, 1248; 63 A. L. R. 484, 486; 144 A. L. R. 486, 492; 39 Am. Jur., Parks, Squares and Playgrounds, section 25; 64 C. J. S., Municipal Corporations, section 1821, page 305. Thus the only public use specially mentioned in the Act is inconsistent with use as a park. This is also ordinarily true of use of parks for railroad purposes. Annotations, 18 A. L. R. at 1249; 63 A. L. R. at 486. See also 39 Am. Jur., Parks, etc., section 26. Yet the propriety of use for railroad purposes of part of what is known as Riverview Park is conceded. The conclusion is unavoidable that the land in question was reserved to public use, without limiting it to a particular use such as a park.

The rule applicable to property such as this held for general public uses is stated in 26 C. J. S., Dedication (published 1956), section 65, page 559: "Whenever property is dedicated in merely general terms to public use, without specifying any particular use, such use necessarily varies with changing circumstances, customs, and requirements of life, and, is therefore subject, from time to time, to determination by the proper legal authorities, subject to judicial control as to legality; and, in determining whether property used for certain purposes may be used for other public purposes, the benefit of the public is the paramount consideration. An unrestricted dedication can be used for any purpose for which the municipal authorities or the legislature may determine, as long as it is a public use. The fact that municipal authorities had devoted the property to one use does not deprive them from devoting it to other and more comprehensive uses. It is only where property is dedicated generally without restriction to the use of the public that the

public has a free hand in applying the property to such uses as it may desire."

To like effect is 64 C. J. S., Municipal Corporations, section 1818b, page 299.

39 Am. Jur., Parks, etc., section 22, page 819, has this to say: "But where land is dedicated generally to a public use without designating any particular public use, as in the case of land dedicated simply as a 'square,' the legislature may, in the absence of private rights intervening, designate and determine to what particular public use the property shall be devoted."

Both the legislature and the city have authorized use of part of this river front for public dock and warehouse purposes. Such use is not inconsistent with that imposed upon the property.

■ An important rule of construction is applicable here. There is a distinction between property dedicated by private owners to public use and that which is publicly owned and designated by public authority to public purposes. Use to which the former may be put is more restricted than that for which the latter may be employed. Carson v. State, 240 Iowa 1178, 1184–1189, 38 N.W.2d 168, 172–175, and citations; Patrick v. Blake, 70 S. D. 494, 19 N.W.2d 220, 223, and citations; 39 Am. Jur., Parks, etc., section 21, page 817; 26 C. J. S., Dedication, section 49, page 519; Annotations, 18 A. L. R. 1246, 1247; 63 A. L. R. 484, 486; 144 A. L. R. 486, 488 et seq.

Carson v. State, supra, and Collis v. Board of Park Commissioners of Clinton, 240 Iowa 946, 38 N.W.2d 635, go further than we go here. They uphold the right of municipalities, with legislative approval, to divert to a different public use property never privately owned, which was designated by public authority *to some particular public use*. In the Carson case land originally designated a park was diverted to the use of the State University. (See explanation of Carson v. State in Gritton v. City of Des Moines, 247 Iowa 326, 337, 73 N.W.2d 813, 819.) In the Collis case ground originally designated a levee along the Mississippi River was converted into a park. And it was once privately owned but plaintiff did not claim through such owner.

The import of the Carson and Collis decisions is that even if the ground in controversy here had originally been designated by the government for use as a park, the city could with legislative approval divert it to another public use, at least where, as here, no special private rights have arisen in the meantime by purchase or improvement of adjacent property in reliance on the permanency of its use for a park. (Page 1189 of 240 Iowa, page 175 of 38 N.W.2d; page 949 of 240 Iowa, pages 636, 637 of 38 N.W.2d.)

Our holding here, that land never privately owned, designated by the government "for public use, as public highways, *and for other public uses"* may with legislative approval be devoted to a different public use from that of a park, is less far-reaching.

We may observe too that the present controversy involves the use of only 2.2 acres of a total of 30 to 32 acres known as Riverview Park. Also that to adopt plaintiff's contention the tract may be used only for park purposes would restrict the public use to which the ground could be put, contrary to the terms of the Act of 1836.

What we have said is decisive of the appeal. Other contentions have been considered but need not be discussed.— Affirmed.

All JUSTICES concur.