MID-AMERICA PIPELINE COMPANY, appellant, v. IOWA STATE COMMERCE COMMISSION (members) and NORTHERN GAS PRODUCTS COMPANY, appellees.

No. 50555.

April 3, 1962.

Rehearing Denied June 12, 1962.

Herrick, Langdon, Sandblom & Belin, of Des Moines, for appellant.

Gibson, Stewart & Garrett, of Des Moines, for appellee Northern Gas Products Company.

Waldo F. Wheeler, Commerce Counsel, of Des Moines, for appellees Iowa State Commerce Commission, and Bernard J. Martin, Ray H. Thompson and Harold E. Hughes, being the chairman and commissioners of said Iowa State Commerce Commission.

THOMPSON, J.— Plaintiff's action is in three divisions. Each division is based on the alleged illegality of a permit for the construction of a pipeline issued by the defendant Iowa State Commerce Commission to the defendant Northern Gas Products Company. The first division asks issuance of a writ of certiorari against the commission, asserting the illegality of its act in issuing the permit. The second asks an injunction restraining the defendant Northern Gas Products Company, hereinafter referred to as Northern, from building the pipeline; and the third is for a declaratory judgment asking that the order and permit of the commission be declared illegal and void and that Northern has no rights thereunder. The basis for the prayer of each division is supported by the same pleaded facts. Since the trial court granted motions to dismiss each division and plaintiff elected to stand upon the rulings and judgment was entered against it, we have before us only the well pleaded facts and permissible conclusions which under well settled rules we must take as admitted and true.

I. The two major questions for determination are whether the commission had a right under constitutional statutes to grant the permit; and whether the plaintiff is in such a position that it may challenge the commission's action. It appears from the

petition and amendments that the plaintiff has been at all times material the operator of a pipeline, originating in New Mexico and western Texas, for the purpose of public transportation of liquid hydrocarbons. It serves western Iowa through one branch and eastern Iowa through another, and, at the time of the hearing before the commission on Northern's application for a permit, had commenced the construction of a pipeline which would serve central Iowa.

On April 18, 1961, Northern's petition for a permit to construct and operate a pipeline from near Pacific Junction, Iowa, to Des Moines came on for hearing. The plaintiff appeared and objected, acting under the provisions of section 490.9 of the 1958 Code, which we quote: "Objections. Any person, corporation, company, city or town whose rights or interests may be affected by said pipe line or lines or gas storage facilities may file written objections to said proposed pipe line or lines or gas storage facilities or to the granting of said permit."

At the hearing before the commission, it was "brought out" as the commission's record shows, that Northern intends to handle only its own products by pipeline and is not a common carrier of such products. This points up the first question which must be determined. The commission, under chapter 490 of the Code, has the power to issue permits for the construction of pipelines in Iowa. Stress is placed upon the necessity for safety; and section 490.25 says "Any pipe-line company having secured a permit for pipe lines as in this chapter provided shall thereupon be vested with the right of eminent domain to such extent as may be necessary and as prescribed and approved by said state commerce commission * * *." The permit, No. 409, issued by the commission to Northern provides that "During the period of time this permit is in force the said company is vested with the right of eminent domain to such extent as may be necessary and as prescribed and approved by the Iowa State Commerce Commission, not exceeding seventy-five (75) feet in width for right-of-way and not exceeding one (1) acre in any one location in addition to the right-of-way for the location of pumps, * * *." In granting the permit, the commission was within the terms of chapter 490. But the plaintiff says that so interpreted the statute is unconstitutional in that it permits granting the right of

eminent domain for solely private purposes, and without any showing of public necessity or convenience.

Taking the allegations of the petition, Northern is a private corporation intending to operate the proposed pipeline for private purposes. This may not be done; and any statute giving such a right is beyond the pale of constitutional authority. The power of eminent domain may be granted and exercised only where a public use is involved. Abolt v. City of Fort Madison, 252 Iowa 626, 633, 634, 108 N.W.2d 263, 267, and citations. We must agree that the grant of the power of eminent domain for a strictly private purpose and use, as chapter 490 seems to authorize, is beyond legislative authority and when the commission attempts to follow the statute in granting such right it is acting illegally and beyond its jurisdiction. It has no right to put into effect unconstitutional provisions of a statute.

The defendants say the plaintiff has not yet been injured; that the commission, under section 490.25 and the issued permit, may yet deny the right of eminent domain. We are unable to agree. The commission's intent to permit the use of such power too well appears. It is true the statute and the permit both use the language "to such extent as may be necessary and as prescribed and approved by the (commission)." But there seems no doubt the commission regards this as giving it supervision only over the limits to which the power may be exercised by Northern. In view of the fact that it appeared at the hearing, as plaintiff shows in its petition, that Northern intends to build the pipeline for a private use only, there would have been no ground for issuance of the permit, at least in the form it was done, unless the power of eminent domain was thought to be granted. In an exhibit attached to and made a part of the petition is set out what is termed, apparently by the commission, a "Discussion", which is somewhat in the nature of an opinion by the commission. In there we find it stated that the commission found that public convenience and necessity was not an issue in the hearing and was not heard. It was also stated therein that "the line will be for the purpose of delivery of the liquid hydrocarbons only of said company." It is futile to urge that the commission may at some future date deny the power of eminent domain to Northern; its intent to do so and its belief

that it must follow the terms of the statute too clearly appear. We hold the provisions of chapter 490 if interpreted to authorize the grant of the power of eminent domain for private uses only are unconstitutional and void. Nor will it avail defendants to now assert that the proposed pipeline will in fact serve the public convenience and necessity, and so be for a public use. We do not reach this question under the situation here. That is not the case made by the pleadings, which limit our consideration strictly to the grant of the power of eminent domain for private use.

II. The defendant Northern urges that an interstate pipeline operated by a private concern to put its products on the market in interstate commerce is a common carrier subject to regulation by the Interstate Commerce Commission. In support of this it cites Champlin Refining Co. v. United States, 329 U. S. 29, 67 S. Ct. 1, 91 L. Ed. 22. That Northern may be subject to regulation by the Interstate Commerce Commission as a common carrier may be true; but this does not aid the defendant. If this is so, it is because of special terms of the Interstate Commerce Act, a federal statute providing for the regulation of certain carriers. The controversy in the Champlin case concerned the right of the Interstate Commerce Commission to require Champlin to furnish certain inventories, maps and charts of its pipeline property. The United States Supreme Court pointed out that the statute provided that "common carriers" includes "all pipeline companies." Loc. cit. 329 U. S. 33, 67 S. Ct. 3. But it also said: "Admittedly Champlin is not a common carrier in the sense of the common-law carrier for hire. However, the Act does not stop at this but goes on to say that its use of the term 'common carrier' is to include all pipeline companies." The case holds only that the Act in question permits the Interstate Commerce Commission to regulate pipeline carriers engaged in interstate commerce, whether they are in fact common carriers engaged in serving a public use or otherwise.

III. The defendants contend, and the trial court found, that the plaintiff has no right to raise the constitutional question and may not challenge the issuance of the permit by the

commission. It is said that the plaintiff has no interest which permits it to object. We are unable to agree.

We have set out above section 490.9. This section is broad in its terms; it permits any person or corporation "whose rights or interests may be affected" to object to the granting of a permit. But the defendants urge that the plaintiff has no right to a monopoly and so no right to object to competition. The petition alleges that the effect of operation of Northern's proposed pipeline under the permit granted will be to place it in direct competition with the plaintiff; and again we must point out that this allegation is admitted by the motion to dismiss.

██ ██ It is true the holder of a permit, or franchise, has generally no right to a monopoly; it is subject to competition. But this must be lawful competition. It is said in 29 C. J. S., Eminent Domain, section 29, page 820: "The right to object that an appropriation of private property is not for a public use is not confined to the owner of the property sought to be appropriated, but such objection may be raised by any person interested, even a taxpayer." The plaintiff here has a much more direct and important interest than the ordinary taxpayer would have.

Directly in point, and highly persuasive in its reasoning, is Brazosport Savings and Loan Assn. v. American Savings and Loan Association, Tex., 342 S.W.2d 747. The action was one for injunctive relief and a declaratory judgment brought by a savings and loan association, holding a valid license to operate as such, against another association which had been issued what the plaintiff claimed was an invalid license. The state banking commissioner, empowered to issue licenses under the Texas law, was made a party defendant.

It was urged that the plaintiff had no interest in the matter which gave it a right to challenge the validity of the license issued to the defendant company. The defendants contended plaintiff was attempting to restrain competition. After conceding that ordinarily private businesses are not entitled to protection against competition, the Texas Supreme Court said: "Such is not the case, however, for savings and loan associations are quasi-public in nature, and we do not view petitioners' claim as a right to operate free of competition, but rather as a right to

operate free of *unlawful* competition, created in violation of law." Loc. cit. 342 S.W.2d 750. After stating the plaintiff had a vested right which it was entitled to protect, the court held that it was entitled to the protection of the courts against an illegal action of an administrative body which would affect such right. Loc. cit. 342 S.W.2d 750.

To the same effect is Frost v. Corporation Commission, 278 U. S. 515, 521, 49 S. Ct. 235, 237, 73 L. Ed. 483, 488. The case concerned the operation of cotton gins in Oklahoma, where they were held to be public utilities and might not be operated unless a permit was secured from the State Corporation Commission. Speaking on the question of the right of the plaintiff to question what it contended was an illegal permit issued to a competitor, the United States Supreme Court said:

"While the right thus acquired [to operate a cotton gin] does not preclude the state from making similar valid grants to others, it is, nevertheless, exclusive against any person attempting to operate a gin without obtaining a permit or, what amounts to the same thing, against one who attempts to do so under a void permit; in either of which events the owner may resort to a court of equity to restrain the illegal operation upon the ground that such operation is an injurious invasion of his property rights." Several authorities are cited. See also Bowman v. Kansas City, Mo., 233 S.W.2d 26, 30, and authorities cited.

Both defendants cite Browneller v. Natural Gas Pipeline Co., 233 Iowa 686, 8 N.W.2d 474. Other questions were there involved; but the opinion holds that the plaintiffs, parties whose lands were to be taken by the pipeline company under a permit from the commission and the right of eminent domain, were not in a position to raise the question of unconstitutionality of the statutes on the ground that they were discriminatory. Obviously the plaintiffs were not the ones discriminated against and were not injured because of any discrimination. We are not inclined to extend the holding beyond that point. In the instant case the plaintiff is directly interested in and injured by the issuance of the unlawful permit. We do not find Dennis v. Independent School District, 166 Iowa 744, 148 N.W. 1007, also cited and relied upon by the defendants, to be in point.

IV. We must conclude that on the face of the plead-

ings the commission acted illegally in issuing the permit to Northern, and so certiorari will lie. This is not to say the commission did not follow the apparent meaning of the governing statutes; and it may be correct that as an administrative body it has no right to challenge the constitutionality of statutes under which it operates. But we have held above that, interpreted as the commission has done, the statutes are in violation of provisions of both the United States and Iowa Constitutions, particularly the Fifth Amendment to the Constitution of the United States and Article I, section 18, of the Constitution of Iowa.

Likewise there is no doubt that the plaintiff has its remedy by injunction to restrain the threatened illegal interference with its rights and injury to its interests; nor that there is a justiciable controversy between it and the defendants warranting an action for a declaratory judgment. In fact all three divisions of the plaintiff's petition have their basis in substantially the same considerations of law and fact.

V. One of the grounds of the motion of the commission to dismiss was that there is a misjoinder of causes of action. Misjoinder of causes of action is no longer a ground for demurrer or dismissal in Iowa. The matter is now ruled by rule 27(b), Iowa Rules of Civil Procedure. We do not decide whether there is a misjoinder here, although we have pointed out that the substantial issues are the same in all three divisions.

The case having come to us upon the issues made by the pleadings, and it having been determined that a cause of action is stated, we must reverse the judgment of the trial court and remand the matter for further proceedings.—Reversed and remanded.

All JUSTICES concur except BLISS, J., not sitting.