**Marie Ida SIMPSON, Appellant,**

v.

**LOW–RENT HOUSING AGENCY OF MOUNT AYR, Iowa, Appellee.**

Nos. 2–56404, 2–56528.

Supreme Court of Iowa.

Dec. 18, 1974.

Wilson & Bonnett by Richard L. Wilson, Lenox, for appellant.

Duncan, Jones, Riley & Finley by Thomas A. Finley, Des Moines and William M. Warin, Mount Ayr, for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REES and HARRIS, JJ.

RAWLINGS, Justice.

This review involves two appeals by plaintiff, both emanating from one proceeding in eminent domain. The first stems from trial court's decree annulling a writ of certiorari. The second relates to an adverse ruling on plaintiff's noticed appeal to district court from a condemnation commission award. We affirm in part, dismiss in part.

The task at hand is exceedingly difficult because of the complicated procedural background and relatively abbreviated appendix. See Iowa R.Civ.P. 344.1.

As best we can determine these are the relevant facts involved.

## EMINENT DOMAIN PROCEEDINGS

November 17, 1972, after commencement of proceedings in eminent domain, the appointed commissioners determined compensation to be awarded and notice thereof was given plaintiff-condemnee.

December 18 plaintiff gave notice of appeal to Ringgold District Court from said commission award.

March 27, 1973, defendant moved to dismiss plaintiff's noticed appeal to district court or to affirm the commission award because of plaintiff's failure to file a petition within the time prescribed by The Code 1971, Section 472.22.

May 7, 1973, this attendant order was entered: "Motion to Dismiss or Affirm is overruled provided plaintiff delivers to defendant written surrender of possession of subject premises on or before June 7, 1973; otherwise said motion is sustained, the assessment affirmed and appeal dismissed."

June 7, 1973, plaintiff gave notice of appeal to this court from said May 7 adjudication, and again from decree entered March 21, 1973 in the certiorari action.

June 11, 1973, defendant filed "Application to Modify and Amend Order" of May 7 because plaintiff had not, on or before June 7, vacated and surrendered the condemned property.

The same day there was entered an "Order Modifying and Amending Previous Order" of May 7. Trial court thereby sustained defendant's motion to affirm the condemnation commission award and further decreed that in event plaintiff did not voluntarily remove herself from the property by June 22, 1973, a writ of possession be promptly issued. No appeal to this court followed the above adjudication.

June 25, 1973, a writ of possession issued.

## CERTIORARI PROCEEDINGS

December 18, 1972, plaintiff filed a petition in certiorari thereby contending defendant-condemnor had no constitutional right to take and pursue the instantly involved eminent domain proceeding.

January 10, 1973, after filing of answer and reply, trial court ordered a writ of certiorari issue regarding defendant's condemnation authority.

March 21, after hearing was had, trial court annulled the previously issued certiorari writ.

April 19 plaintiff gave notice of appeal therefrom to this court.

## ISSUES

Plaintiff here contends (1) as to the certiorari review, trial court erroneously held there existed no constitutional bar to the taking by eminent domain of plaintiff's property for construction of low-rent housing and (2) with regard to plaintiff's condemnation appeal from the commission award the aforesaid May 7, 1973 ruling was fatally obscure, uncertain and vague.

## I. CERTIORARI APPEAL

Plaintiff urges the provisions of Code Chapter 403A, under which the instant eminent domain proceedings were initiated, contravene U.S.Const., Amend. V and Iowa Const. art. I, § 18, since such condemnation was for a private as opposed to a public use.

■ It must be initially conceded the power of eminent domain cannot be utilized for the purpose of taking private property from one person for the private use of another. See Stewart v. The Board of Supervisors of Polk County, 30 Iowa 9, 19 (1870).

Stated otherwise, the power of eminent domain can be exercised only for a public use or purpose. See Race v. Iowa Electric Light & Power Co., 257 Iowa 701, 704, 134 N.W.2d 335 (1965); R & R Welding Supply Co. v. Des Moines, 256 Iowa 973, 976, 129 N.W.2d 666 (1964); Vittetoe v. Iowa South-

ern Utilities Co., 255 Iowa 805, 812, 123 N.W.2d 878 (1963); Mid-Am. Pipeline Co. v. Commerce Comm., 253 Iowa 1143, 1147, 114 N.W.2d 622 (1962); Abolt v. City of Fort Madison, 252 Iowa 626, 633–634, 108 N.W.2d 263 (1961).

These authorities spring from Art. I, § 18 of the Iowa Constitution which states, inter alia: "Private property shall not be taken for public use without just compensation * * *." See City of Emmetsburg v. Central Iowa Tel. Co., 250 Iowa 768, 778, 96 N.W.2d 445 (1959).

■ It is for the legislature to initially determine whether condemnation of private property is for a public use. Vittetoe v. Iowa Southern Utilities Co., 255 Iowa at 809, 123 N.W.2d 878; Abolt v. City of Fort Madison, 252 Iowa at 634, 108 N.W.2d 263; Reter v. Davenport, R.I. & N.W. Ry. Co., 243 Iowa 1112, 1118–1119, 54 N.W.2d 863 (1952).

And in that regard an examination of Chapter 403A discloses the legislature thereby declared, in essence, low-rent housing is a public use. See Ermels v. City of Webster City, 246 Iowa 1305, 1307–1308, 71 N.W.2d 911 (1955); Reter v. Davenport, R.I. & N.W. Ry. Co., supra.

■ Also, where the general assembly declares a condemnation-related use is public in nature there exists an attendant presumption of constitutionality with which this court will not interfere unless the purpose is clearly, plainly and manifestly of a private character. See Vittetoe v. Iowa Southern Utilities Co.; Abolt v. City of Fort Madison; Ermels v. City of Webster City; Reter v. Davenport, R.I. & N.W. Ry. Co., all cited above.

In like vein, every reasonable intendment must be indulged in favor of a statutory enactment. See Cedar Rapids Human Rights Commission v. Cedar Rapids Community School District, 222 N.W.2d 391 (Iowa, October 16, 1974); Ermels v. City of Webster City, supra.

■ It is for the courts, however, to ultimately determine whether a taking by eminent domain is for a public purpose when constitutionality of the foundational statute is challenged. See Reter v. Davenport, R.I. & N.W. Ry. Co., supra; Burger v. City of Beatrice, 181 Neb. 213, 147 N.W.2d 784, 788 (1967); Great Northern Ry. Co. v. Chicago, St. P., M. & O. Ry. Co., 78 S.D. 168, 99 N.W.2d 439, 443 (1959).

■ It is also well settled we are not required to treat a legislative declaration of purpose as final, binding or conclusive. Abolt v. City of Fort Madison, 252 Iowa at 634, 108 N.W.2d 263.

But there is no hard and fast rule by which to determine, in any given instance, whether a particular use is public or private. See Ferguson v. Illinois Cent. R. Co., 202 Iowa 508, 511–512, 210 N.W. 604 (1926); Sisson v. Supervisors, 128 Iowa 442, 453, 104 N.W. 454 (1905); Bowman v. Kansas City, 361 Mo. 14, 233 S.W.2d 26, 32 (1950).

Even so it remains for us to now determine, under applicable guiding principles, whether low-rent housing, per se, constitutes a public use.

Code § 403A.20 provides, in relevant part: "A municipality shall have the right to acquire by condemnation any interest in real property, * * * which it may deem necessary for or in connection with a municipal housing project under this chapter." And § 403A.2(9) defines housing project as any undertaking "(a) to * * * remove buildings from any slum areas; or (b) to provide * * * dwellings * * * for persons of low income; or (c) to accomplish a combination of the foregoing." Authorization is thus given a municipality to effectuate any or all of the aforesaid goals. Furthermore, those objectives are noticeably distinct, one being designed to authorize low-rent housing alone for persons of limited income as defined in § 403A.2(10), the other permitting clearance and rehabilitation of slum areas as defined in § 403A.2(8). Undoubtedly many projects alluded to in § 403A.2(9), quoted above, will

necessarily embrace both facets of the statutory purpose. On the other hand the language of the enactment here involved is in the disjunctive; one project need not accompany the other. Significantly the condemnation proceeding before us does not even faintly suggest its foundational purpose was to effectuate a combined slum clearance and low-rent housing. Thus we have at hand the condemnation of private property for statutorily permitted low-rent housing alone.

To the extent here material every municipality is given authority by § 403A.8 to undertake studies with regard to housing needs; provide for construction of low-rent dwellings; and finally to lease or rent such accommodations within the redevelopment project.

In support of the view that low-rent housing constitutes a public use, defendant alludes to Webster Realty Company v. City of Fort Dodge, 174 N.W.2d 413 (Iowa 1970). We do not find the cited case accords defendant the aid suggested.

In *Webster Realty, supra,* plaintiff commenced a declaratory judgment action to test validity of the issuance of general obligation bonds to finance a community construction project. This program was undertaken pursuant to The Code 1966, Chapter 403, identified as "Urban Renewal Law."

Plaintiff there asserted, in relevant part, Chapter 403 was unconstitutional since it permitted appropriation of funds and levying of taxes for private as opposed to public use. In upholding constitutionality of the challenged Act this court relied, in large part, on those authorities noted in 44 A.L. R.2d 1414, 1420. But an examination of the cases there cited, upholding redevelopment statutes, reveals the clearance of slums or blighted areas was the underlying rationale which prompted a finding of public use.

Illustratively, in Hunter v. Norfolk Redevelopment & Housing Author., 195 Va. 326, 78 S.E.2d 893, 900 (1953) the court said:

"The reasoning of the courts which have adopted the majority view [upholding the constitutionality of redevelopment laws] is that the primary purpose of the legislation is the elimination and rehabilitation of the blighted and slum sections of the cities, [and] that such purpose falls within the conception of public use * * *."

Also, in Belovsky v. Redevelopment Authority, 357 Pa. 329, 54 A.2d 277, 282 (1947), it is said:

"[T]here being in the present act only the one major purpose of the elimination and rehabilitation of the blighted sections of our municipalities, * * * that purpose certainly falls within *any* conception of 'public use' for nothing can be more beneficial to the community as a whole than the clearance and reconstruction of those sub-standard areas * * *."

To like effect is this statement in 2A Nichols on Eminent Domain, § 7.5156 (3rd ed. 1970):

"It had been contended by those who sought to impede or defeat low-cost housing and slum clearance that legislation in support of such purposes was for the benefit of particular individuals and classes and therefore, no public use was involved. In overruling such contention, the courts have held that determination of the question of public use depends not at all upon the factor of the right to use the housing facilities and who shall be permitted to exercise such right, but rather upon the factor of the general public benefit which must, of necessity, ensue upon the removal of disease-infected and crime-breeding communities."

It is thus evident *Webster Realty, supra,* does not reach the issue now before us. Like the statutes involved in those authorities last above cited, Chapter 403 is basically a combined slum clearance and redevelopment enactment. Briefly stated, the foregoing references are confined to those instances where it has been determined the elimination of slums or blighted areas combined with the need for community redevel-

opment, may justify the taking of private property by eminent domain. Illustratively, Code § 403.5(1) says: "A municipality shall not approve an urban renewal project for an urban renewal area unless the governing body has, by resolution, determined such area to be a slum area or a blighted area or a combination thereof * * *."

Distinguishably, Chapter 403A, under which the instant proceeding was brought, authorizes condemnation of property for construction of low-rent housing although the territory condemned is not a slum or blighted area. Therefore, where redevelopment occurs pursuant to § 403A.2(9)(b) and condemnation is independent of any slum clearance as authorized by 403A.2(9)(a), the taking for low-rent housing must rest on its own merit as a public use.

Consequently, the problem now to be resolved is whether the power of eminent domain can be constitutionally exercised by a municipality in order to provide for low-rent housing alone.

An examination of the decisions of this court discloses we have never before been called upon to resolve that issue. Therefore, authorities from other jurisdictions, though not binding on us, will be considered. See Hubbard v. State, 163 N.W.2d 904, 909 (Iowa 1969).

In Cremer v. Peoria Housing Authority, 399 Ill. 579, 78 N.E.2d 276 (1948) defendant contended its proposed housing project, even in the absence of slum clearance, constituted an expenditure of funds for the public purpose of alleviating an existing housing shortage. The court upheld that contention and in so doing aptly stated, 78 N.E.2d at 282:

"The necessary consequence of the housing shortage is a danger to the health, safety, morals and welfare of the public. In large segments of the population, housing units designed for single-family occupancy must be utilized for several families. Overcrowding and lack of adequate sanitary accommodations result. Health is menaced because of insufficient living space per person in each unit. * * In facilitating the supply of additional housing facilities, the 1947 State Grant Act strikes directly at the social evils inherent in the existing acute shortage of adequate dwellings. This, alone, constitutes a proper public purpose for the expenditure of State funds."

Touching on the same issue the court said in Weitzner v. Stichman, 271 App.Div. 255, 64 N.Y.S.2d 50, 54 (1946):

"We think that such a taking has a sufficient tendency to increase housing facilities, and thus is a benefit to the public as a whole so as to constitute a public purpose, and the basis for the exercise of the power of eminent domain."

To like effect is this statement in Housing Authority of City of Oakland v. Forbes, 51 Cal.App.2d 1, 124 P.2d 194, 196–197 (1942):

"The first inquiry is whether this housing project is a public use.

" * * *

"On the first question, that of public use, we are satisfied * * * there can be no question * * * that the Legislature has unequivocally declared that a housing project such as this, is a public use. There is nothing in this record to indicate that such legislative determination is erroneous."

See also Winkelman v. City of Tiburon, 32 Cal.App.3d 834, 108 Cal.Rptr. 415, 423 (1973); Kankakee County Housing Authority v. Spurlock, 3 Ill.2d 277, 120 N.E.2d 561, 565 (1954); New Jersey Mortgage Finance Agency v. McCrane, 56 N.J. 414, 267 A.2d 24, 27–28 (1970); Johnson v. Pennsylvania Housing Finance Agency, 453 Pa. 329, 309 A.2d 528, 533 (1973); 2A Nichols on Eminent Domain, § 7.5156 [2] (3d ed. 1970).

■ In summary the foregoing authorities enunciate the view that even where a municipal or state project does not contemplate slum clearance, eminent domain may be constitutionally exercised to provide land for low-rent housing accommodations.

We are so persuaded and hold accordingly.

But is Chapter 403A subject to attack because not all members of the public can qualify for rental usage?

■ Plaintiff argues low-rent housing will not be available to the public generally but will instead be confined to only those with a prescribed level of income. See § 403A.2(10). It is thereupon urged the project does not qualify as a public use. Plaintiff thus apparently contends a public use depends upon the *extent* rather than the *character* of the use. We do not agree.

Reter v. Davenport, R.I. & N.W. Ry. Co., *supra,* involved an attempted condemnation of plaintiff's property so a railroad might acquire additional switch and storage tracking. In brief, we there said, 243 Iowa at 1119, 54 N.W.2d at 867: " 'The test of public character is not in the number of persons or corporations located along the line of a proposed branch, but in the character of the use to which the branch will be put.' "

Also, in Merritt v. Peet, 237 Iowa 1200, 1204–1205, 24 N.W.2d 757, 760 (1946), this court stated: "The use of property by a public agency in the exercise of its functions is a public use, whether or not individual members of the general public have the right to use the same."

Admittedly, this court has never specifically dealt with plaintiff's instant contention in the context of low-rent housing. As heretofore demonstrated, however, other jurisdictions have done so. Based on the principle enunciated in *Reter* and *Merritt,* both *supra,* numerous courts have uniformly held occupancy of dwellings even by only a few of the public having the prescribed qualifications is legally insignificant. Addressing itself to that subject in Dornan v. Philadelphia Housing Authority, 331 Pa. 209, 200 A. 834, 840 (1938), the court declared:

"[T]he fact that the dwellings cannot and will not be occupied by all, but only a few of the public having the prescribed quali-

fications of poverty, is wholly lacking in legal significance, because the same may be said as to jails, poorhouses, and indeed many other institutions which are necessarily confined to a use, voluntary or involuntary, by certain selected portions of the population. An occupancy by some may promote, or even be vital to, the welfare of all. Nor is importance to be ascribed to the circumstance that some persons—the tenants—will from time to time receive more benefit from the use of the dwellings than the general public. The same observation would apply to hospitals and schools. * * * It is not essential that the entire community or even any considerable portion of it should directly enjoy or participate in an improvement in order to make its use a public one."

See also United States v. Boyle, 52 F.Supp. 906, 908 (N.D.Ohio 1943); Johnson v. Pennsylvania Housing Finance Agency, 453 Pa. 329, 309 A.2d at 533–534; Nashville Housing Authority v. City of Nashville, 192 Tenn. 103, 237 S.W.2d 946, 949–950 (1951); Housing Authority v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79, 84–85 (1940).

We hereby adopt the pronouncement in *Dornan, supra,* and hold in accord therewith.

Trial court's adjudication on the plaintiff-invoked certiorari review is affirmed.

## II. CONDEMNATION APPEAL

As previously stated, plaintiff also claims trial court's "Ruling" of May 7, 1973 "is obscure, uncertain and vague". Before entertaining that issue, however, we must resolve defendant's countering assertion to the effect the instant appeal by plaintiff was impermissibly taken from an interlocutory adjudication absent requisite permission. See Iowa R.Civ.P. 331(b), 332.

An orderly approach to the question put by defendant's aforesaid contention necessitates some repetition of the procedural background.

At the outset, as heretofore observed, plaintiff gave notice of appeal to district court from the condemnation commission award. But plaintiff failed to file an attendant petition within the statutorily required time. Defendant thereupon moved to dismiss said appeal or affirm the commission award. Three days later, absent leave of court, plaintiff belatedly filed a petition. See Baker v. City of Cedar Falls, 185 N.W.2d 810, 812 (Iowa 1971); Code § 472.22. Cf. Carmichael v. Iowa State Highway Commission, 156 N.W.2d 332 (Iowa 1968).

May 7, 1973 trial court entered this previously quoted ruling: "Motion to Dismiss or Affirm is overruled provided plaintiff delivers to defendant written surrender of possession of subject premises on or before June 7, 1973; otherwise said motion is sustained, the assessment affirmed and appeal dismissed."

June 7, 1973, plaintiff filed "Notice of Appeal to Supreme Court" from said May 7 adjudication.

So the issue to be resolved is whether that ruling was a final adjudication from which appeal could be taken as a matter of right. See Iowa R.Civ.P. 331(a).

In Johnson v. Iowa State Highway Comm., 257 Iowa 810, 812, 134 N.W.2d 916, 917 (1965) we said:

"A final judgment or decision is one that finally adjudicates the rights of the parties. It must put it beyond the power of the court which made it to place the parties in their original position. *A ruling or order is interlocutory if it is not finally decisive of the case.*" (Emphasis supplied).

See also Helland v. Yellow Freight System, Inc., 204 N.W.2d 601, 604 (Iowa 1973); Employers Group of Ins. Cos. v. Villhauer, 254 Iowa 391, 394, 118 N.W.2d 38 (1962).

Furthermore, the record reveals that on June 11, 1973, defendant filed an "Application to Modify or Amend Order" of May 7 because plaintiff had failed to surrender possession of the involved property.

Pursuant thereto an "Order Modifying and Amending Previous Order" was entered June 11, 1973. Trial court thereby (1) sustained defendant's motion to dismiss plaintiff's appeal from the condemnation commission award; (2) ordered plaintiff to vacate the premises by June 22, 1973; and (3) directed that in event she failed to do so a writ of possession be issued. No appeal was taken therefrom.

■ For reasons hereafter set forth we conclude the May 7 ruling was interlocutory.

In the first place it was provisional. On this subject we declared in Williams v. Bourne, 248 Iowa 189, 192, 79 N.W.2d 751, 753 (1956): "[A]s a general rule final judgments must not be conditional * * *." See also Johann Maria Farina v. Roger & Gallet, 296 F.2d 119 (2d Cir. 1961); 4 Am. Jur.2d, Appeal and Error, § 51; 4 C.J.S. Appeal & Error § 96.

Furthermore, said May 7 ruling was not finally decisive of the case. See Johnson v. Iowa State Highway Comm.; Helland v. Yellow Freight System, Inc.; Employers Group of Ins. Cos. v. Villhauer, all *supra*; Ruth & Clark, Inc. v. Emery, 235 Iowa 131, 132–133, 15 N.W.2d 896 (1944). Demonstrably, trial court entered a final adjudication June 11, 1973, by which defendant's motion to dismiss plaintiff's appeal was sustained. This clearly constituted a changed matter of substance. But, as aforesaid, no appeal was then taken.

Moreover, by said May 7 ruling, plaintiff was deprived of no right which could not be protected by an appeal from the June 11 final adjudication. See Wolf v. Lutheran Mut. L. Ins. Co., 236 Iowa 334, 343–344, 18 N.W.2d 804 (1945). See also Iowa R.Civ.P. 337.

Under these circumstances this court is without jurisdiction to entertain plaintiff's appeal from the May 7, 1973 ruling. See Lunday v. Vogelmann, 213 N.W.2d 904, 906 (Iowa 1973).

By virtue of the foregoing the appeal here attempted is dismissed. See Helland v. Yellow Freight System, Inc., 204 N.W.2d at 605.

Consequently, the issue raised by plaintiff as to vagueness of the order upon which notice of appeal was given is not reached.

Affirmed in part, dismissed in part.